IN THE UNTIED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF V I R G I N I A
(Alexandria Division)

| | |
|---|---|
| BRANDON EICKHOFF<br><br>BRANDON EICKHOFF, DERVATIVELY ON BEHALF OF DRONE SECURITY SERVICES LLC<br><br>Plaintiffs<br><br>v.<br><br>BRANDON YOUNGBLOOD<br>1130 Marseille Ln.<br>Woodbridge, VA 22191<br><br>Defendant<br><br>    and<br><br>DRONE SECURITY SERVICES, LLC<br><br>Nominal Defendant | Case No. _____ |

**VERIFIED COMPLAINT**

Plaintiff Brandon Eickhoff ("Eickhoff" or "Plaintiff"), on behalf of himself and derivatively on behalf of Drone Security Services LLC ("DSS") by and through his undersigned attorneys, files this Complaint against Defendant Brandon Youngblood ("Youngblood" or "Defendant") and in support thereof state as follows:

## Introduction

This matter involves the majority owner of a small business violating the company's operating agreement, diverting opportunities to other companies that only he owns and misappropriating the company's assets and trade secrets for his own benefit, harming both the Plaintiff and the company itself.

## Parties

1. Plaintiff Bradon Eickhoff is an individual who resides in India with his wife who works for the U.S. Department of State.

2. Drone Security Services is a Virginia Limited Liability Company with a principle place of business in Woodbridge, Virginia.

3. Defendant Brandon Youngblood is an individual residing in Woodbridge, Virginia.

## Jurisdiction and Venue

4. Jurisdiction is proper in this case under 28 U.S.C. § 1332(a) through diversity of citizenship and through 28 U.S.C. §1331 under Federal trade secret statutes.

5. Venue is proper in this Court under 28 U.S.C. §1391(b)(1).

## Facts

6. Eickhoff and Youngblood first met when they were both working for the Federal Aviation Administration ("FAA") in 2019 - 2022. Youngblood was a senior government official, and Eickhoff was a contractor working for the FAA.

7. During this period the parties developed a professional relationship around drones and emerging technologies.

8. Eickhoff moved to Europe when his wife was transferred to German and began working as a contractor for U.S. European Command.

9. In this role, Eickhoff worked on aerospace defense strategy, which included counter drone activities.

10. Youngblood reached out to Eickhoff via a LinkedIn message to propose the idea of starting a company focused on drone defense.

11. In the fall of 2024, Eickhoff and Youngblood began drafting and revising a business plan for DSS with the Plaintiff taking the lead role in drafting this document.

12. As Youngblood is a military veteran with a service connected disability rating, the parties decided that Youngblood should be the majority owner to pursue certain federal contracting benefits.

13. The parties ultimately finalized an agreement on October 1, 2024 with Youngblood owning 55% of DSS and Eickhoff owning 45%.

14. On October 7, 2024 Youngblood registered Drone Security Professional Services LLC with the Commonwealth of Virginia.

15. On October 23rd, he filed an amendment changing the name to Drone Security Services LLC.

16. In the fall of 2024, Youngblood initiated the process for SDVOSB approval.

17. Among these requirements are that the veteran have ownership and control of the company.

18. On January 8, 2025, the parties entered an operating agreement for the company and memorializing the 55/45 ownership and agreeing to terms that are compliant with the Service-Disable Veteran-Owned regulations.

19. This agreement also stated that Youngblood would "dedicate full-time efforts to the management and operations of the Company and shall not engage in any outside obligations that could impede" this ability.

20. DSS received its SDVOSB certification on January 23, 2025.

21. Eickhoff begins working for the benefit of DSS submitting contract proposals and creating certain intellectual property for the company.

22. Unbeknownst to Eickhoff, Youngblood owned and operated a competing drone security company known as Drone Defense Professionals ("DDP").

23. Youngblood registered this company on October 31, 2024 and was working on behalf of this company when he signed the operating agreement in January.

24. Over the next several months, Youngblood used DSS intellectual property, confidential information and resources on behalf of DDP.

25. For example, Youngblood used DSS funds to pay for a trademark registration for DDP.

26. Youngblood used DSS resources and IP to solicit contract opportunities from third party companies such as Cobec Consulting, ZBeta, Wild West Systems and Warren County Community College ("WCCC").

27. At the time Youngblood solicited ZBeta for DDP, ZBeta was a paying client of DSS; Youngblood diverted this contract to his new entity.

28. After receiving a contract from WCCC, Youngblood directed the college to change the contracting party from DSS to DDP – diverting this opportunity to his competing company.

29. Youngblood has continued to use DSS's IP on behalf of DDP and other entities.

## Count I
### (Breach of Contract)

30. Plaintiff hereby incorporates all proceeding paragraphs by reference and realleges them as if fully set forth in this Count I.

31. The DSS operating agreement is a binding and enforceable contract.

32. This contract requires Youngblood to dedicate full-time efforts to DSS and not engage in other obligations that interfere with DSS's operations.

33. Youngblood breached this obligation by performing work on behalf of a competing entity, misusing DSS's IP and resources and divert contracts from DSS to DDP.

34. These actions are a breach of the operating agreement.

35. As a direct and proximate result of Youngblood's actions in breaching the contract, Eickhoff and DSS have suffered certain damages.

## Count II
### (Breach of Fiduciary Duty)

36. Plaintiff hereby incorporates all proceeding paragraphs by reference and realleges them as if fully set forth in this Count II.

37. Youngblood as a member and officer of DSS, Youngblood owed a fiduciary duty to the Company and Eickhoff.

38. Youngblood breached this duty by operating a competing company, misusing DSS IP and resources and usurping business opportunities for his competing company.

39. DSS and Eickhoff suffered financial and other damages as a result of Youngblood's breaches of duties.

## Count III
### (Trade Secret Misappropriation)

40. Plaintiff hereby incorporates all proceeding paragraphs by reference and realleges them as if fully set forth in this Count III.

41. DSS has certain IP and other trade secrets such a its Project Lucid program, the Pricing models and structures, proprietary methodologies and competitive intelligence information.

42. All of these trade secrets were created by DSS for use by DSS using DSS resources.

43. Youngblood used these trade secrets on behalf of himself and DDP.

44. Youngblood was not authorized to use DSS's trade secrets on behalf of DDP.

45. Youngblood's misuse of DSS's trade secrets harmed the Company and Eickhoff.

46. Youngblood's misappropriation of DSS's trade secrets is a violation of the Defend Trade Secrets Act.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a) The Court enter a judgment against Defendant and find that Plaintiff is entitled to all damages available under law;

b) Permanently enjoin Defendant from misusing DSS's trade secrets and intellectual property;

c) Award punitive damages and attorney's fees;

d) Award such further relief available under the law.

Dated: August 26, 2025

        Respectfully submitted,

        RESTON LAW GROUP, LLP

        *Lewis Rhodes*
        _____
        Lewis P. Rhodes
        John A. Bonello
        2100 Reston Parkway
        Suite 450
        Reston, VA 20191
        Phone: 703-483-2810
        Fax: 703-264-2226
        LRhodes@RestonLaw.com
        JBonello@RestonLaw.com

        Attorneys for Plaintiff Brandon Eickhoff