UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BRANDON EICKHOFF, )<br>)<br>and )<br>)<br>DRONE SECURITY SERVICES LLC )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>BRANDON YOUNGBLOOD )<br>)<br>    Defendants. )<br>_____ ) | CASE NO.: 25-cv-01406 |

**PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Brandon Eickoff ("Eickoff") and Drone Security Services LLC ("DSS") (collectively "Plaintiffs"), by their undersigned counsel, hereby move this Court for a temporary restraining order and then (following expedited discovery) a preliminary injunction against Defendant Brandon Youngblood ("Defendant"). Plaintiffs respectfully request injunctive relief to require Defendant to: (1) comply with the DSS Operating Agreement; (2) to refrain from improper use and disclosure of DSS's trade secrets; (3) return DSS property and records; and (4) preserve relevant information and restore access to DSS business operation accounts and information.

**REQUEST FOR EMERGENCY HEARING**

As explained below and set forth in more detail in the previously filed Complaint, it is beyond question that Defendant has breached the DSS Operating Agreement and unlawfully used and disclosed DSS trade secrets. DSS was formed on October 7, 2024. Eickoff is a 45% owner of DSS and Defendant is the Managing Member of DSS and owns 55% of the Company.

A copy of the DSS Operating Agreement is attached as Exhibit A. DSS's "business purpose is to provide unmanned aircraft systems (UAS). Otherwise known as "drones," security and counter-UAS (C-UAS) consulting services and products." The DSS Operating Agreement was written to comply with the Small Business Administration's Service-Disable Veteran-Owned Small Business ("SDVOSB") regulations. As such the Operating Agreement vested control in Defendant in exchange for Mr. Youngblood dedicating "full-time efforts to the management and operations of the Company and [ ] not engage in any outside obligations that could impede" this ability. *Id.* Except Mr. Youngblood knew he would not honor that commitment at the time he signed the Operating Agreement. On October 31, 2024, Defendant formed Drone Defense Professionals, LLC ("DDP"). Defendant never disclosed to Plaintiff that he founded this competing company. Exhibit B, Eickhoff Declaration at 3.

Plaintiffs seek immediate injunctive relief from the Court to ensure that Defendant is not permitted to continue breaching his contractual promises and benefitting from his misappropriation of DSS's trade secrets. Defendant has violated the law and terms of the DSS Operating Agreement. Specifically, Defendant has violated section 9 of the DSS Operating Agreement. Section 9 of the DSS Operating Agreement provides that Defendant "shall act in the best interest of the Company and shall be expected to perform any necessary duties to further the Company's objectives . . . . [Defendant] shall dedicate full-time efforts to the management and operations of the Company and shall not engage in any outside obligations that could impede his ability to control the management and daily business operations of the Company." Defendant's breach of section 9 of the DSS Operating Agreement is demonstrated by Defendant: (1) creation of a competing company; (2) diverting DSS contracts and opportunities to Defendant's competing company; (3) failing to control the management and daily business operations of DSS; and (4) misappropriating DSS trade secrets for Defendant's competing companies.

## I. PRELIMINARY STATEMENT OF FACTS

Plaintiff hereby incorporates the facts set forth in Paragraphs 6-29 of its Complaint as the factual basis underlying their request for injunctive relief.

## II. PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF

Typically, in determining the propriety of the issuance of injunctive relief, a court considers the following: (1) the likelihood of success on the merits; (2) the extent to which a denial of injunctive relief will result in irreparable harm to the plaintiff; (3) the balance of the equities in granting or denying injunctive relief; and (4) the public interest. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). Here, these factors weigh heavily in favor of the issuance of an injunction. Indeed, this Court has recently issued temporary restraining orders and/or preliminary injunctions under similar circumstances on numerous occasions. *See Fid. Glob. Brokerage Grp., Inc. v. Gray*, No. 1:10CV1255, 2010 WL 4646039, at *3 (E.D. Va. Nov. 9, 2010) (granting injunctive relief to prevent a former employee from using former employer's confidential customer information to solicit customers for his new employer); *Fred Hutchinson Cancer Rsch. Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 881 (E.D. Va. 2011) ("When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied."); *Sci. Applications Int'l Corp. v. CACI-Athena, Inc.*, No. 1:08CV443JCC, 2008 WL 2009377, at *4 (E.D. Va. May 8, 2008) (granting emergency motion for temporary restraining order, stating "[a]n injunction that merely commands a party to perform its contractual obligations does no harm to that party").

### A. Plaintiff Has A Likelihood of Success on the Merits

#### 1. Defendant's breaches of the DSS Operating Agreement

Defendant has been in breach of Operating Agreement from the moment he first signed it. Despite agreeing not to take action that impeded the operations of DSS, Defendant was already running a competing company. Not only did he continue to operate this competing entity, Youngblood would use

DSS assets on behalf of DDP, for example he used DSS funds to register trademarks for DDP. Exhibit B, Eickhoff Declaration at ¶ 4. Defendant has issued written directives to divert a major paying DSS client (ZBeta) and is actively soliciting investment from another DSS prospect (ARGI) for DDP and his other competing ventures. *Id.* at ¶ 5. Most recently, Defendant through DSS negotiated a contract with Warren County Community College ("WCCC"). After finalizing the terms of that contract, Defendant told WCCC to "strip" the DSS name from that contract and reissue it under Defendant's name. *Id.* at ¶ 6. Over the past several months, Defendant has used DSS assets, confidential information and trade secrets to solicit work on behalf of DDP and other competing ventures.

As the Fourth Circuit has held in a similar case: **"An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The customers cannot be 'unsolicited.'"** *Merrill Lynch v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985) (emphasis added). In short, Defendant has violated the DSS Operating Agreement and Plaintiffs are entitled to an injunction to protect their contractual rights.

### 2. Defendant has Misappropriated DSS's Trade Secrets.

Plaintiffs are also entitled to injunctive relief on a wholly separate ground: to protect DSS's trade secrets. The information that Defendant used for and disclosed to his competing company qualifies for trade secret protection under the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336 *et seq.*, ("VUTSA") and the Defend Trade Secrets Act, 18 U.S.C § 1832 *et seq.*, ("DTSA"). Both the VUTSA and DTSA expressly provides for injunctive relief to protect trade secrets against both actual and threatened misappropriation. To state a claim under the DTSA, "a plaintiff must allege (1) the existence of a trade secret as defined in the statute; (2) a nexus between the secret and interstate or foreign commerce; and (3) misappropriation of such trade secret." *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC*, 716 F. Supp. 3d 432, 448 (W.D. Va. 2024).[1]

---

[1] The elements of a claim for a violation of VUTSA are similar to those of the DTSA except that the DTSA requires a relationship to interstate commerce. To establish that certain information has been the subject of a trade-secret violation under VUTSA, a plaintiff must prove two statutory elements: (1) the existence of a

The term "trade secret" under the DTSA is defined as,

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information ...

18 U.S.C. § 1839(3).

Courts in Virginia regularly accord customer and pricing information trade secret status and have issued injunctive relief to prevent the use and disclosure of this data. *See, e.g.*, *Fid. Glob. Brokerage Grp., Inc. v. Gray*, No. 1:10CV1255, 2010 WL 4646039, at *4-5 (E.D. Va. Nov. 9, 2010) (holding that financial firm's customer information qualified for trade secret protection); *International Paper Co. v. Gilliam*, 63 Va. Cir. 485, 490-91 (2003) (holding that customer price lists, which may inform a competitor of who Plaintiff's customers were, how to reach them, and exactly what each customer demands at what price are trade secrets); *See Marsteller v. ECS Fed., Inc.*, No. 1:13CV593 JCC/JFA, 2013 WL 4781786, at *4 (E.D. Va. Sept. 5, 2013) (finding that documents relating to ISO certification, the ECS Capture Plan and Capture Plan Templates and the Pipeline review documents were trade secrets).

The trade secrets that Defendant unlawfully used and disclosed derive independent economic value from not being generally known because they allow DSS to create, market, and sell unique products and services. *Nat'l Legal Research Grp. v. Lathan*, No. CIV. A. 92-0031-C, 1993 WL 169789, at *8 (W.D. Va. May 17, 1993) (finding that reports had trade secret status because defendant "received the printout for many years precisely because it was of great

---

'trade secret'; and (2) the 'misappropriation' of that trade secret by the defendant." *Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 778 (E.D. Va. 2012), *aff'd*, 505 F. App'x 242 (4th Cir. 2013).

value in performing his work").

DSS took reasonable means to protect the secrecy of the information and trade secrets through information technology security measures, such as password protection and need-to-know restrictions. *Marsteller v. ECS Fed.*, Inc., No. 1:13CV593 JCC/JFA, 2013 WL 4781786, *4 (E.D. Va. Sept. 5, 2013) (finding that storing documents on password-protected server constituted reasonable effort to maintain secrecy); *Lathan*, 1993 WL 169789, at *22 (access limited to a few key officers, patent attorney, and the particular employee who was using the information in his employment); *Dionne v. SE Foam Converting & Packaging, Inc.*, 240 Va. 297, 302, 397 S.E.2d 110, 113 (1990) ("The crucial characteristic of a trade secret is secrecy rather than novelty."). Nevertheless, Defendant has misappropriate DSS's trade secrets.

Defendant has used DSS's trade secrets to pursue work and opportunities from various third parties. At a minimum currently known to Plaintiff, Defendant has solicited Cobec Consulting, ZBeta, Wild West Systems and WCCC using DSS's trade secret and confidential information. He even used DSS's email system to make these solicitations. Eickhoff Declaration at ¶¶ 7,8. Defendant also used DSS's trade secrets to pursue investment into DDP and his competing ventures: using DSS information to solicit AGRI to invest into DDP. *Id.*

Defendant took steps to conceal his improper use and disclosure of DSS's trade secrets, which reflects that he knew that what he was doing was wrong and that he was using improper means to acquire, disclose, and use the information. DTSA, 18 U.S.C.A. § 1839(6)(A) (defining "improper means" to include "misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means").

    B.  **Plaintiff Has No Adequate Remedy at Law**

The law in the Fourth Circuit is clear that injunctive relief is appropriate where customer relationships are at issue. *Salomon & Ludwin, LLC v. Winters*, No. 24-1728, 2025 WL

2314652, at *3 (4th Cir. Aug. 12, 2025) ("loss of goodwill, customers and the ability to attract new customers may entitle a party to injunctive relief"); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 719 (4th Cir. 2021) ("The permanent loss of a business, with its corresponding goodwill, is a well-recognized form of irreparable injury."); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable*, 22 F.3d 546, 552 (4th Cir. 1994) ("the threat of a permanent loss of customers and the potential loss of good will . . . support a finding of irreparable harm"); *GovCIO, LLC. v. <govciocareers.com>*, No. 123CV1181RDALRV, 2023 WL 9318481, at *4 (E.D. Va. Sept. 19, 2023) ("harm is difficult to quantify and irreparable because once consumer trust is eroded"). It would be difficult at best for Plaintiffs to put a dollar figure on Defendants harm to DSS and the value of the information that Defendant has unlawfully used and disclosed, especially because Defendant could disclose the information to additional third parties. Likewise, it is also challenging to put a dollar figure on the value of the relationships at stake. This is a classic case in which injunctive relief is appropriate.

    C. **The Balance of Equities Favors the Imposition of Injunctive Relief.**

  The benefit of injunctive relief to Plaintiffs would far outweigh any detriment to Defendant. The potential harm to Plaintiffs is significant in that Defendant has diverted DSS clients and business opportunities and Defendant seeks to serve those clients armed with DSS's trade secrets. An injunction would protect DSS's goodwill, business reputation, methods of business operation, and contract rights. It would potentially avert significant losses that Plaintiffs would otherwise face.

  Defendant has no equities on his side. Defendant has intentionally breached the DSS Operating Agreement and has deliberately misappropriated DSS's trade secrets in order to give Defendant's competing company an unfair competitive edge when pursuing customers and business opportunities. Moreover, Defendant took steps to conceal his actions. Defendant cannot complain about the harms that he would suffer for having to abide by the DSS Operating

Agreement and honoring DSS's intellectual property rights because Defendant placed himself in his current situation by hatching and executing on a scheme to compete unfairly and illegally. The relief sought would merely require Defendant to do what he contractually agreed to do. "An injunction that merely commands a party to perform its contractual obligations does no harm to that party." *Sci. Applications Int'l Corp. v. CACI-Athena, Inc.*, No. 1:08CV443JCC, 2008 WL 2009377, at *4 (E.D. Va. May 8, 2008)

        D.        **The Public Interest Favors the Imposition of Injunctive Relief.**

The public has an interest in fair competition. Indeed, the United States Supreme Court has emphasized the importance to the public interest of protecting trade secret business information and in deterring commercial piracy:

> The necessity of good faith and honest, fair dealing is the very life and spirit of the commercial world. It is hard to see how the public would be benefited by disclosure of customer lists. . . .
>
> In addition to the increased costs for protection from burglary, wiretapping, bribery, and other means used to misappropriate trade secrets, there is the inevitable cost to the basic decency of society when one firm steals from another. A most fundamental human right, that of privacy, is threatened when industrial espionage is condoned or is made profitable; the state interest in denying profit to such illegal ventures is unchallengeable.

*Kewanee Oil Corp. v. Bicron Corp.*, 416 U.S. 470 (1974). An injunction enforcing the terms of the Operating Agreement and requiring that Defendant return and refrain from using or disclosing DSS's trade secrets would uphold that important value.

Additionally, the public interest favors the enforcement of contracts. "Failure to grant a TRO and thereby inhibit further contract breach is harmful to the public's ability to rely on contract agreements." *Moller-Maersk A/S v. Escrub Sys., Inc.*, No. 1:07CV1276JCC, 2007 WL 4562827, at *4 (E.D. Va. Dec. 21, 2007). *See Pearl Ins. Grp., LLC v. Baker*, No. 0:18-CV-02353-JMC, 2018 WL 4103333, at *5 (D.S.C. Aug. 29, 2018) ("The relief requested by Plaintiff is consistent with

the public interests of enforcing valid contracts, preventing unfair competition, and protecting confidential, trade-secret information from improper misappropriation.") The public has no conceivable interest in Defendant refusing to honor the DSS Operating Agreement.

      E. **Alternative Justification for Injunctive Relief**

Even if this Court were to find that Plaintiffs were not able to meet the traditional prerequisites outlined above, this Court has statutory authority to enforce the operating agreements of limited liability companies. Virginia Code section 13.1-1023(C) provides that "[a] court of equity may enforce an operating agreement by injunction or by such other relief that the court in its discretion determines to be fair and appropriate in the circumstances." Under Virginia law, [w]hen a statute empowers a court to grant injunctive relief, the party seeking an injunction is not required to establish the traditional prerequisites, *i.e.,* irreparable harm and lack of an adequate remedy at law, before the injunction can issue." *Virginia Beach S.P.C.A., Inc. v. S. Hampton Roads Veterinary Ass'n*, 229 Va. 349, 354 (1985). Here, Plaintiffs have presented sufficient facts for this Court to find that it would be fair and appropriate for this Court to grant injunctive relief that requires Defendant to comply with the terms set forth in the DSS Operating Agreement.

**V.   CONCLUSION**

      For the foregoing reasons, Plaintiffs request injunctive relief containing the following terms:

      A. **Injunctive Relief regarding Compliance with DSS Operating Agreement:** That Plaintiffs be granted temporary and injunctive relief requiring Defendant to act in the best interests of DSS, perform all necessary duties to further DSS objectives, dedicate full-time efforts to the management and operation of DSS, and refrain from engaging in any outside obligations that could impede his ability to control the management and daily business operations of DSS. Defendant shall immediately cease soliciting, diverting, accepting, or

contracting for any business opportunity belonging to DSS, including but not limited to any opportunity with Warren County Community College, ZBeta, and ARGI.

B. **Trade Secrets and Compliance with Agreements:** That Plaintiffs be granted temporary and preliminary injunctive relief restraining Defendant from using, disclosing, transferring, altering any trade secret, confidential information, protectable business intelligence, and/or other proprietary information of DSS.

C. **Return of Records and Other Property:** That Defendant be ordered to return immediately to Plaintiffs all records and other property pertaining in any way to DSS (whether on paper, electronic, contained on computer disks, or in some other form, and any copies thereof), including, but not limited to, customer or client information, pricing information, methodologies, correspondence, notes, industry research, product information, business solutions information, or any other documentation related to DSS's business.

D. **Preservation and Restoration Access:** That Defendant be ordered to immediately take all necessary steps to preserve all documents, data, and electronically stored information ("ESI") related to this matter, including the full contents of the personal email accounts listed as contact points on Defendants' DRETNET pitch deck, all content and communications on Defendant's personal LinkedIn account, and all data within any artificial intelligence platform accounts (such as ChatGPT) for which subscriptions were expensed to DSS or which were used for the benefit of DSS or Defendant's competing ventures. Further, Defendants shall immediately provide Plaintiffs with read-only credentials to all **company-controlled** financial and operational accounts, including but not limited to: QuickBooks/Intuit, Wells Fargo, DSS email (bmy@dssai.ai), DDP email (bmy@dronedef.com), HardHood Defense email (bmy@hh-defense.com), Calendly, all cloud storage drives (e.g., Google Drive, OneDrive), GoDaddy, SquareSpace, and domain registrar and DNS records, collaboration platforms (e.g., iMessage, Microsoft Teams), and any systems related to multi-factor authentication, for the purpose of

inspection and preservation.

Dated:  August 26, 2025

Respectfully submitted,
RESTON LAW GROUP, LLP

_____
Lewis P. Rhodes
John A. Bonello
2100 Reston Parkway
Suite 450
Reston, VA 20191
Phone:  703-483-2810
Fax: 703-264-2226
LRhodes@RestonLaw.com
JBonello@RestonLaw.com

Attorneys for Plaintiff Brandon Eickhoff